IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MUNSON,<br><br>            Plaintiff,<br><br>v.<br><br>ROB JEFFREYS,<br>STEVE MEEKS,<br>DAVID MITCHEL,<br>CHRISTINA BROWN,<br>PERCY MYERS,<br>BOB BLUM, and<br>WEXFORD HEALTH SOURCES, INC.,<br><br>            Defendants. | Case No. 24-cv-00559-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Munson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that he was diagnosed with arthritis around ten years ago. (Doc. 1-1, p. 55). His condition impacts his back, hips, knees, and shoulders, making it painful for him to move. Plaintiff also states that he suffers from bone degeneration and a herniated disc. While at Lawrence

Correctional Center (Lawrence), medical staff attempted to treat his conditions with "several pain medications found to [be] inefficous[sic], including the medication Voltaren." Eventually, Plaintiff was treated effectively with Tylenol 3 and given a low bunk permit. (*Id.*). Plaintiff asserts that he also needs a low bunk permit because his blood pressure and diabetes medications cause dizziness, orthostatic-hypotension, and fainting. (*Id.* at p. 64).

Plaintiff was transferred to Pinckneyville Correctional Center (Pinckneyville) on July 29, 2021. (Doc. 1-1, p. 55). He was not issued a low bunk permit, and he was assigned to a top bunk bed without a ladder. After being at Pinckneyville for a few days, Plaintiff fell trying to climb into the top bunk and "busted his chin" and injured his tooth. (*Id.* at p. 55, 58).

Plaintiff had an appointment with Dr. Myers on August 6, 2021. (Doc. 1-1, p. 55). During the appointment, he and Dr. Myers went over Plaintiff's treatment plan that had been implemented at Lawrence, including the low bunk permit and the Tylenol 3 prescription. "Dr. Myers was aware that Plaintiff had sustained an injury trying to" climb into the top bunk. However, despite Plaintiff's previous treatment plan and recent injury, Dr. Myers refused to issue Plaintiff a medical permit for a bottom bunk bed or prescribe Tylenol 3 for pain. Dr. Myers prescribed Voltaren, even though Plaintiff told Dr. Myers that Voltaren did not work at alleviating his pain. When Plaintiff asked why he would not issue him a low bunk permit, Dr. Myers responded, "No! We don't give out low bunk permits." (*Id.*).

About a month later, on September 7, 2021, Plaintiff had an appointment with Nurse Practitioner Blum. (Doc. 1-1, p. 56). Plaintiff told Blum how he had been issued a low bunk permit at Lawrence due to his arthritis, bone degeneration, and herniated disk. He also informed Blum that he had been injured climbing into his top bunk bed. Plaintiff asked for a low bunk permit, but Blum told Plaintiff he could not issue one because Dr. Myers would not allow it. (*Id.*).

On September 14, 2021, Plaintiff fell climbing out of the top bunk bed. (Doc. 1-1, p. 56).

Because he does not have a ladder, Plaintiff was using the sink to step down from the bed, his foot slipped off the sink, and he hit the back of his head on the floor, rendering him unconscious. Plaintiff was found on the floor struggling to get up by Correctional Officer Dicen. Dicen told Plaintiff not to move and returned to the cell with Nurse Jena. Nurse Jena told Plaintiff that an inmate had become paralyzed after falling while trying to climb into a top bunk bed. Nurse Jena did not assess Plaintiff for any injuries. Plaintiff believes he suffered from a concussion. He submitted a nurse sick call request, and for days, he suffered from headaches, trouble concentrating, and swelling on the back of his head. He received a call pass to see a nurse practitioner on September 16, 2021, but the pass was canceled. Plaintiff submitted another nurse sick call request, and he had an appointment with a nurse on September 21, 2021. (*Id.*).

Plaintiff fell again and injured his shoulder on September 28, 2021. (Doc. 1-1, p. 57). Plaintiff was seen by a nurse on October 1, 2021. During the appointment, Plaintiff told the nurse about his need for a low bunk permit, and the injuries he had sustained climbing in and out of his top bunk bed. The nurse told Plaintiff that she did not have his medical chart and that he would have to submit for nurse sick call three timed before he would be seen by a doctor per orders by Dr. Myers and Wexford Health Sources, Inc. (Wexford). The nurse did not provide anything to treat Plaintiff's pain. (*Id.*).

On October 7, 2021, while waiting to see a nurse practitioner, Plaintiff asked Nurse Whitney about when he would see the dentist for his injured tooth. (Doc. 1-1, p. 57). Nurse Whitney reviewed Plaintiff's medical chart, and the dentist, Dr. Mitchell, saw Plaintiff almost immediately. Dr. Mitchell placed a temporary filling and cap over the cracked tooth and informed Plaintiff he would "call [him] back over to rebuild [the] tooth." (*Id.*).

The next time Plaintiff saw Nurse Practitioner Blum, he informed Blum that he had fallen three times while climbing in and out of the top bunk bed since arriving at Pinckneyville. (Doc. 1-

1, p. 58). Plaintiff explained to Blum that he had injured his tooth, shoulder, and head. Blum ordered an x-ray and gave Plaintiff a thirty-day low bunk permit until the x-ray was taken. Blum also told Plaintiff that he would place Plaintiff on the list to see Dr. Myers. (*Id.*).

Plaintiff saw Dr. Myers November 4, 2021, for his injured shoulder. (Doc. 1-1, p. 58). During the appointment, Plaintiff told Dr. Myers about the times he had fallen climbing in and out of the top bunk bed. Dr. Myers reviewed the x-ray and confirmed that Plaintiff had arthritis in his shoulder. Dr. Myers said there was nothing he could do about it. Plaintiff explained he continued to experience pain and again asked for a low bunk permit and showed Dr. Myers his past permits from Lawrence. Dr. Myers responded, "this is not Lawrence. We don't do that here." Plaintiff asked, "You wont give me a permit to protect me from future injures due to arthritis?" and Dr. Myers said, "no." (*Id.*).

Plaintiff was seen by Dr. Myers on November 15, 2022, for a medical review. (Doc. 1-1, p. 59). Plaintiff told Dr. Myers that he was still in pain from his injuries and the arthritis in his back, hip, and knee. He informed Dr. Myers that he had been sleeping on the floor out of fear for his safety and asked again for a low bunk permit. Dr. Myers refused to issue the medical permit. (*Id.*). Plaintiff fell again attempting to descend from the top bunk bed on December 19, 2022, injuring his elbow. (*Id.* at p. 61).

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:**   Eighth Amendment deliberate indifference claim against Jeffreys, Meeks, Mitchell, Brown, Blum, Myers, and Wexford for failing to provide proper treatment for Plaintiff's arthritis, bone degeneration, herniated disk, and associated pain.

**Count 2:**   ADA and RA claim against Jeffreys, Meeks, Mitchell, Brown, Blum, Myers, and Wexford for not accommodating Plaintiff's physical disabilities by failing to issue him a low bunk permit.

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Discussion

### Count 1

As to Count 1, Plaintiff claims that since July 2020, Defendants have acted with deliberate indifference towards his arthritis, bone degeneration, herniated disk, and associated pain by failing to provide him constitutionally adequate treatment, including proper medication and a low bunk permit. He has sufficiently stated an Eighth Amendment claim against his medical providers, Dr. Myers and Nurse Practitioner Blum. He has also stated a claim against Director Jeffreys, Medical Director Meeks, Warden Mitchell, and Health Care Unit Administrator Brown, who he alleges were all aware he was being denied treatment through letters and grievances, yet failed to intervene to ensure he received adequate medical care.

Count 1, however, is dismissed against Wexford. As a corporation, Wexford can only be liable for an unconstitutional policy or practice. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("Such a private corporation cannot be held liable under [Section] 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself."). The Court cannot reasonably infer from the facts, as pled, that the constitutional violations that Plaintiff experienced were the result of Wexford policies. Plaintiff alleges that (1) Wexford does not properly train or supervise its staff; (2) Wexford has a practice of putting profit margins above inmate care; and (3) Wexford has a practice of delaying care by forcing inmates to see a nurse three times in one month before being examined by a doctor. (Doc. 1-1, p. 57, 64-65).

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Despite identifying these alleged policies, Plaintiff does not explain a causal link between the policies and his own experience. For example, he contends that Wexford's cost-saving policy resulting in improper care but then states that issuing him a low bunk permit would not have costed Wexford "one cent." (*Id.* at p. 64). He claims that due to Wexford's policies, he was not seen in the appropriate timeframe, but his complaint against his providers is not that a delay in care exacerbated his condition but that even after several appointments with Dr. Myers and Nurse Practitioner Blum, to this day, he has not been issued a permanent low bunk permit or given an effective treatment plan for his conditions. Finally, he asserts that Wexford provides medical services to the inmates within the Illinois Department of Corrections, and its strict policies and practices resulted in the violation of his rights. (*Id.* at p. 64-65). However, he also states that while he was at Lawrence and treated by "Wexford doctors" he was issued a low bunk permit, and the treatment plan issued "by Wexford Health Care Providers" was working. (*Id.* at p. 55). Thus, Plaintiff claims against Wexford are conclusory, and his complaint is against individual staff members specifically at his local prison, rather than an issue of a widespread practice implemented by Wexford within the entire prison system. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (one key is to distinguish between the wrongdoing of one or a few rogue employees and other, more widespread practices). Plaintiff has failed to state an Eighth Amendment claim against Wexford.

**Count 2**

Plaintiff has stated an adequate claim for violations of the ADA and RA. The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA and RA. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros,* 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper

defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be added to the case, in her official capacity only, as the proper defendant for Plaintiff's ADA and RA claim.

### MOTION FOR STATUS HEARING

In light of this Order, Plaintiff's request for a "status hearing (merit review)" is **DENIED as moot.** (Doc. 12).

In the Motion for Status Hearing, Plaintiff also requests for an injunction to be issued prohibiting Defendants from being involved in his medical care and directing that he be seen by a medical professional to diagnose his immobilizing pain. Plaintiff complains that he had to advocate for himself several times to have blood work performed to check on his prostate and PSA levels. Blood was eventually taken, but he was never called to review the results. At an appointment with Dr. Myers on another medical issue, he asked about the blood results and was told by Dr. Myers that there was nothing wrong with his prostate. Sometime later, he had an appointment with Blum to review his medical chart. Blum gave Plaintiff medication to treat a prostate issue discovered as result of the blood work. Plaintiff asserts that this is the third time that Dr. Myers has given him false information about his medical condition so that Dr. Myers could refuse to treat the condition. Plaintiff states that he does not believe he can continually see the named Defendants for proper medical treatment while he litigates this against them.

The Court construes Plaintiff's request as a request for a temporary restraining order or preliminary injunction, which is **DENIED**. In order to obtain emergency injunctive relief, a plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). Plaintiff's request fails to meet any of these requirements. Notably, he has not shown a likelihood of success on the merits of his claim

and how he is at risk of irreparable harm. Plaintiff is currently receiving treatment for his prostate issues. Furthermore, he has not filed a separate motion for a preliminary injunction or temporary restraining order pursuant to Federal Rules of Civil Procedure 7 and 65.

## DISPOSITION

For the reasons set forth above, the Complaint (Doc. 1) the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Jeffreys, Meeks, Mitchell, Brown, Blum, and Myers, but is dismissed as to Wexford. **COUNT 2** will proceed against Latoya Hughes in her official capacity only. The Clerk of Court is **DIRECTED** to **ADD** the current director of the Illinois Department of Corrections, Latoya Hughes, as a defendant. Because there are no surviving claims against Wexford, the Clerk of Court is **DIRECTED** to terminate Wexford as a defendant.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Jeffreys, Meeks, Mitchell, Brown, Blum, Myers, and Hughes the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his

last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 31, 2024**

                                                   *s/Stephen P. McGlynn*
                                                   **STEPHEN P. MCGLYNN**
                                                   **United States District Judge**